UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WAYNE ROBERT HARLEY,

    Plaintiff,

v.                                                  CASE NO. 6:20-CV-2201-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**<u>ORDER</u>**

This is an appeal of the administrative denial of disability insurance benefits (DIB) and period of disability benefits.[1] *See* 42 U.S.C. § 405(g). Plaintiff argues the administrative law judge (ALJ) erred by discounting the opinions of his treating chiropractors. After considering the parties' arguments (doc. 36) and the administrative record (doc. 27), I find the Commissioner's decision is supported by substantial evidence. I affirm.

    A.    *Background*

Plaintiff Wayne Harley was born in 1959, and was 54 years old on his alleged disability onset date of October 20, 2013. (R. 648) After graduating high school, Plaintiff attended trade school and joined the carpenters' union. He worked as a journeyman carpenter, earning certifications for heavy equipment operating ("forklifts, aerial lifts, scaffold building"), until his alleged onset date. (R. 650) He also has work experience as a millwright. (R. 651) Plaintiff worked for Walt Disney World and did "carpentry, mainly, and it could have been anything from doing form work, to scaffold-building, to hanging doors, removing walls, rebuilding

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

walls. Anything under the description of a carpenter, which covers a huge amount of work." (R. 653)  He also worked for the construction company Whiting-Turner, building an extension to the Grand Floridian Hotel, and for Walgreens doing interior build-outs. (R. 654-55)

Plaintiff is divorced with three adult children. (R. 650)  He lives with his son and his son's fiancée.  In 2013, Plaintiff stopped working after he was in a hit-and-run accident on his motorcycle. (R. 658)  He went to the ER via ambulance and, after CT scans of his spine, chest, and brain, was released the same day.  But after the accident, he developed neck, back, and shoulder pain and did regular physical, massage, and chiropractic therapy for three years, until he was involved in another motorcycle crash in 2015. (R. 659)  Since then, he alleges, the pain in his back and neck prevents him from walking more than an eighth of a mile, standing for more than one hour, and lifting over four pounds. (R. 660-661)  Plaintiff testified that he has no trouble sitting.

Plaintiff testified that he has a driver's license and drives his pick-up truck two or three times a week to the grocery store and to his daughter's house to visit his new grandson.  And "almost every day" he drives to his elderly parents' home three miles away to check on them. (R. 662)  Plaintiff testified that he enjoys going to the beach, being in the woods, and fishing. (R. 663)  He does daily stretching exercises recommended by his chiropractor. (R. 664)  With his girlfriend, Plaintiff will "go out and visit our friends.  Like, you know, we both like music, and we both like the beach, and those are some of the things we do as often as we can." (R. 670)  He still owns his Harley-Davidson and rides it a couple of times a year. (R. 665)

Plaintiff received chiropractic treatment after his second motorcycle accident, and the pain "has gotten better, yes, over the last several years.  Yes, it has gotten a lot better. . . . As

far as the pain is concerned, it is not there constantly. But, if I do things to aggravate it, then, the pain comes back pretty severely." (R. 667) He testified that he recently tried to kayak, which "aggravated the pain level. And that lasted almost three weeks before I got it to calm back down." (R. 668) He takes Tylenol or Advil to control his pain.

After Plaintiff's first administrative hearing in October 2016, the ALJ found that Plaintiff was not disabled. (R. 10-18) When the Appeals Council (AC) denied his request for review, Plaintiff appealed to district court. (R. 1-3) In January 2019, the district court reversed the Commissioner's decision and remanded Plaintiff's application to the AC to reconsider whether Plaintiff's spinal impairments meet Listing 1.04A (regarding spine disorders that result in a compromise to the nerve root or spinal cord). (R. 702-10) The AC directed a second administrative hearing, which was held in September 2020. (R. 644-76) In a second decision, the ALJ found that Plaintiff had the severe impairments of cervical and lumbar disc disease but these impairments did not meet Listing 1.04A. The ALJ found Plaintiff maintained the residual functional capacity (RFC) for light work with these limitations:

> Claimant is able to lift, carry, push and pull up to ten pounds frequently and up to twenty pounds occasionally. The claimant is able to sit for a total of six hours and stand or walk for a total of six hours in an eight-hour workday. The claimant is able to reach overhead with the bilateral upper extremities on a frequent basis. The claimant can frequently balance, stoop, crouch and climb ramps and stairs. The claimant can occasionally kneel, crawl and climb ladders or scaffolds. In addition to normal breaks, the claimant is expected to be off task for up to five percent of the workday due to physical symptomology.

(R. 628-29)

With this RFC, the ALJ found Plaintiff could not return to his past relevant work as a millwright and carpenter but, after consulting a vocational expert (VE) at the hearing, the ALJ determined Plaintiff had transferable skills from past work, specifically, problem solving, critical thinking, coordination, judgment, decision making, time management,

communication, and monitoring. (R. 633)  The VE testified these skills could transfer into work as a contractor or a construction superintendent, jobs that exist in significant numbers in the national economy. (*Id.*)  Based on Plaintiff's RFC and the VE's testimony, the ALJ found Plaintiff not disabled.  Plaintiff appealed the ALJ's decision to the AC, which this time denied review.  Plaintiff, his administrative remedies exhausted, filed this action.

   B.  *Standard of Review*

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. § 423(d)(1)(A).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations.  These regulations establish a "sequential evaluation process" to determine if a claimant is disabled.  *See* 20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a)(4).  Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work;

and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    C.    Discussion

        1.    *Plaintiff's treating chiropractors*

Plaintiff argues the ALJ erred by discounting the opinions of his treating chiropractors, Jennifer Smith, D.C. and Koteuaisa Wilson, D.C. According to Plaintiff, they treated him more often than any other medical provider (a combined 47 times between 2013 and 2020), their treatment notes are more detailed than those of other sources, and their opinions follow the evidence (doc. 36 at 19-28). The Commissioner responds that the ALJ properly assigned

significant weight to the consultative opinion of Alvin Barber, M.D. and little weight to Plaintiff's other sources, including Drs. Smith and Wilson, who are not acceptable medical sources and whose opinions are not considered medical opinions under the regulations (*Id*. at 28-38). On this record, I agree with the Commissioner that substantial evidence supports the ALJ's decision.

The method for weighing medical opinions under the Social Security Act is in the regulations at 20 C.F.R. § 404.1527(c).[2] The opinions of examining physicians are generally given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. § 404.1527(c)(1-5). A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

This rule – the "treating physician rule" – reflects the regulations, which recognize that treating physicians "are likely to be the medical professionals most likely to provide a detailed, longitudinal picture of . . . medical impairment." 20 C.F.R. § 404.1527(c)(2). With good cause, an ALJ may disregard a treating physician's opinion but "must clearly articulate the reasons for doing so." *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (*quoting Phillips v. Barnhart*, 357 at 1240 n.8). And the ALJ must state the weight given

---

[2] This section was rescinded on March 27, 2017, but still applies to claims filed before this date. Plaintiff filed his claim in July 2015. (R. 153)

to different medical opinions and why. *Id*. Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

A chiropractor, however, is not an acceptable medical source. *See* 20 C.F.R. §§ 404.1502, 404.1513(a),(d). The treating physician rule does not apply. Instead, a chiropractor is considered an "other source." *See* 20 C.F.R. §§ 404.1513(a),(d), 404.1527(a)(2); SSR 06-3p. An ALJ does not have to articulate his or her reasons for discounting opinions offered by non-medical sources. *Cf*. 20 C.F.R. § 404.1527(c)(2) (requiring ALJs to provide "good reasons" for the weight assigned to opinions from treating acceptable medical sources). In other words, a chiropractor is not qualified to provide a medical opinion, and a chiropractor's opinion is not entitled to any special significance or consideration. *See id.*; *Miles v. Soc. Sec. Admin.*, 469 F. App'x 743, 745 (11th Cir. 2012) (noting that "an ALJ has no duty to give significant or controlling weight to a chiropractor's views because, for SSA purposes, a chiropractor is not a 'medical source' who can offer medical opinions."). However, an ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; ALJ cannot point to evidence that supports the decision but disregard other contrary evidence).

Turning to Plaintiff's treatment history, Dr. Wilson and her partner Tiffany Moulterie, D.C. of Adkore Rehabilitation evaluated Plaintiff for the first time in December 2013, six months after his first helmetless motorcycle accident.[3] (R. 296) Plaintiff complained of neck,

---

[3] ER doctor Barney Dillard, M.D. treated Plaintiff the day of the accident at Halifax Health Center in Orange, Florida. Plaintiff complained of pain at the site of multiple abrasions and had some hematomas to the scalp. (R. 269) Dr. Dillard diagnosed an acute closed head injury and stated, "[f]ortunately his workup was negative for serious traumatic injury." (R. 271)

low back, and shoulder pain. Dr. Moulterie noted Plaintiff had cervicalgia, lumbago, neck sprain, lumbar sprain, shoulder joint pain, and a post-traumatic headache. (*Id.*) From that first appointment, Plaintiff treated at Adkore two to three times a month until April 2014, with massage therapy, stretching, traction for his neck, and chiropractic adjustments. (R. 296-324) Drs. Wilson and Moulterie primarily completed brief progress notes following each appointment but sometimes completed longer and more detailed evaluation forms. Plaintiff consistently assessed his neck, low back, and shoulder pain at a level of five or six out of 10, and Plaintiff's progress notes and evaluations from Adkore show incremental improvement. (*Id.*) For example, in April 2014, Plaintiff had a good prognosis, and said he "feels the care at Adkore is helping." (R. 319)

That same month, Plaintiff consulted with neurosurgeon Mark Cuffe, M.D., who reviewed Plaintiff's imaging taken in the ER the day of his accident. (R. 353) Plaintiff told Dr. Cuffe that chiropractic and physical therapy provided temporary pain relief. Dr. Cuffe noted Plaintiff had disc herniation at C4-5, C5-6, and C6-7 (compressing the C7 nerve root). He opined that Plaintiff had three options: he could have two cervical diskectomies and fusions (C4-5 and C5-6), he could have three cervical diskectomies and fusions (C6-7 as well), or he could try epidural steroid injections. (*Id.*) Plaintiff did not have surgery and did not return to Dr. Cuffe.

Next, in June 2014, Alvan Barber, M.D. evaluated Plaintiff at the agency's request. (R. 327) Dr. Barber recounted that Plaintiff was diagnosed with herniated discs following his June 2003 motorcycle accident, he had completed a rehabilitation session at Adkore by April

---

Plaintiff was discharged from the hospital the same day with a note from Dr. Dillard that he was able to return to work in three days with no restrictions. (R. 272)

2014, had consulted a neurosurgeon (Dr. Cuffe), but otherwise was not seeking medical care and was not on any medications for his pain except for over the counter Tylenol and Advil. Dr. Barber diagnosed Plaintiff with cervical and right shoulder strains and opined Plaintiff can walk, stand, sit, and squat without difficulty, can push and pull with his upper extremities, but cannot lift and carry heavy objects. (R. 333)

In August 2014, after a four-month treatment break from Adkore, Plaintiff returned to Dr. Wilson with disability forms for her to complete. (R. 339) He explained Dr. Cuffe's recommendations and said he could not afford surgery. Dr. Wilson noted Plaintiff's cervical range of motion was severely restricted and that Plaintiff was predisposed to further aggravation of his pain due to his spinal impairments. She also completed a two-page RFC questionnaire at Plaintiff's request. (R. 349) Dr. Wilson opined Plaintiff could sit for 10 minutes at a time for one to two hours in an eight-hour workday, could stand for 10-15 minutes at a time for one to two hours, could occasionally lift 10 pounds and frequently lift less than 10 pounds. He would miss work over four times per month due to his impairments. Although Dr. Wilson opined Plaintiff's prognosis was "fair," she concluded Plaintiff cannot work. (R. 350)

From August 2014, until September 2015, there is a gap in Plaintiff's treatment at Adkore. Then, in September 2015, Dr. Wilson evaluated Plaintiff, noted he should continue with regular chiropractic treatment, and assessed his prognosis as fair. (R. 394-402) Plaintiff returned to Dr. Wilson seven times after that, ultimately discontinuing treatment at Adkore in November 2015 (one month before his second motorcycle accident). (R. 405-16) Dr. Wilson noted Plaintiff's pain persisted but that he responded favorably to treatment and was progressing.

Plaintiff's second helmetless motorcycle accident occurred in December 2015. (R. 660) ER records show that Plaintiff was in moderate pain immediately after the accident and had no lacerations. He had normal pelic, chest, brain, and CT scans but his spinal CT scan showed mild degenerative changes. Plaintiff was discharged the same day of the accident and claimed his pain level was improving. (R. 436) From December 2015 through early February 2016, Plaintiff treated with Amber Sala, D.C., a chiropractor at Coastal Integrative Healthcare in Deltona, Florida. (R. 355-84) He complained of dull and constant low back and neck pain and said he gets some relief with ice packs. He was upset because his pain level was keeping him from riding his motorcycle. (*Id.*) Dr. Sala performed traction, trigger point therapy, electric muscle stimulation, prescribed a durable medical equipment brace for Plaintiff's neck, and urged Plaintiff to stretch at home and drink more water. In January 2016, Plaintiff told Dr. Sala he was feeling much better and that his headaches were less intense. (R. 365) Nonetheless, Dr. Sala consistently characterized Plaintiff's prognosis as "guarded." (*Id.*)

Plaintiff consulted neurosurgery physician's assistant James Piotrowski for back and right leg pain in May 2016. (R. 597) Mr. Piotrowski reviewed updated MRI studies of Plaintiff's lumbar and cervical spine and referred Plaintiff to pain management for consideration of lumbar epidural steroid injections and nerve conduction studies of his right leg. He prescribed Plaintiff Flexeril for muscle spasms and Voltaren for pain relief. (R. 590-600) The record contains no other treatment notes from Mr. Piotrowski.

At this point, Plaintiff switched his treatment to Dr. Smith of Health and Wellness Chiropractic Center. Although Dr. Smith is not a medical doctor, her initial evaluation of Plaintiff in July 2016 purported to be a physical, neurological, musculoskeletal, and

orthopedic examination. (R. 607) She detailed Plaintiff complaints of headaches, neck, back, and shoulder pain, his reduced range of motion in his cervical and lumbar spine, his treatment with conservative chiropractic therapy and over the counter medications, and his tendency to reaggravate his injuries. She noted her "professional opinion that the prognosis is poor despite the temporary improvement of his symptoms and clinical condition[,]" and Plaintiff would have a "permanent residual impairment from these injuries." (R. 613)

Dr. Smith saw Plaintiff consistently for the remainder of 2016, noting some temporary pain relief but otherwise she concluded that Plaintiff was "progressing slower than expected." (R. 617) Dr. Smith treated Plaintiff with vibration station therapy and spinal manipulation and recommended stretches for Plaintiff to perform. (R. 620-95, 852) There is a gap in Plaintiff's treatment with Dr. Smith from November 2016, until early 2020, when she re-evaluated Plaintiff and recommended chiropractic care twice a week for six weeks. Plaintiff saw Dr. Smith five more times until March 2020.

In his decision, the ALJ considered Plaintiff's treatment history with Drs. Wilson and Smith. He found Dr. Smith's opinions "not persuasive. Dr. Smith is not an acceptable treating source as defined by SSR 06-3p." (R. 628, 632-33) He continued: "Little weight is given to the opinion of Dr. Smith, as her assessment was based primarily on the claimant's report of subjective symptoms." (*Id.*) Important to the ALJ was that Plaintiff did not pursue the surgical option and that "Dr. Smith's assessment is inconsistent with her own treatment notes, showing improvement[,]" and with Plaintiff's statements. (*Id.*) Regarding Dr. Wilson's opinion, the ALJ stated: "Dr. Wilson is not an acceptable medical treating source as defined by SSR 06-3p. Little weight is given to the opinion of Dr. Wilson, as her assessment was based primarily on the claimant's report of subjective symptoms. Therefore, as Dr. Wilson's

11

restrictions are not consistent with the claimant's self-reported abilities, and are not bolstered by objective findings of clinical observations in the record, I give limited weight to her opinion." (R. 632)

The ALJ's consideration of Drs. Wilson and Smith's treatment of Plaintiff comports with the regulations in place when Plaintiff filed his claim and is supported by substantial evidence. First, the ALJ did not have to assign any particular weight to their opinions. Regarding Dr. Wilson's August 2014 RFC analysis, an RFC formulation is the ALJ's determination of the most work a claimant can do despite any limitations caused by his impairments. 20 C.F.R. § 416.945(a)(1). This formulation is reserved for the ALJ, who must support his findings with substantial evidence. *See* 20 C.F.R. § 416.946(c); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor."). Here, the ALJ did and – importantly -- Plaintiff does not challenge this.

Second, the ALJ assigned significant weight to consultative examiner Dr. Barber, who opined Plaintiff could walk, squat, stand, and sit without problems. (R. 632) He also gave significant weight to ER physician Dr. Dillard's assessment that Plaintiff could return to work three days after his June 2013 accident, although Plaintiff's RFC for light work reflects limitations Dr. Dillard did not find necessary. (*Id*.) These sources offered medical opinions, unlike those of Drs. Wilson and Smith. Third, the ALJ considered that Plaintiff's treatment

12

was generally conservative and included physical therapy, chiropractic adjustments, stretching, and over the counter pain medications.

Finally, the ALJ emphasized Plaintiff's testimony that he drives daily to visit his parents, visits his daughter and grandson, goes to the beach with his girlfriend, socializes with friends whenever possible, spends time in the woods, fishes occasionally, and even rides his motorcycle a couple of times a year. (R. 644-70)  In fact, when the ALJ asked Plaintiff if his condition had improved since his 2015 crash, he responded, "[i]t was better.  I mean, it was, like, going on six, seven – six years, almost seven years, since that happened.  I mean, I can move around better.  I have to be careful what I do, because I can aggravate the problem." (R. 660)

Against this backdrop, the ALJ's decision to discount Drs. Smith and Wilson's opinions is supported by substantial evidence.  At this point in the analysis, I emphasize that, to the extent Plaintiff asks me to re-weigh the evidence or substitute my opinion for that of the ALJ, I cannot.  If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if I would have reached a different conclusion.  *See Bloodsworth*, 703 F.2d at 1239.  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019).  In other words, I may not reweigh the evidence or substitute my own judgment for that of the ALJ even if I find the evidence preponderates against the ALJ's decision.  *See Bloodsworth*, 703 F.2d at 1239.  On this record, the ALJ did not err his consideration of the opinion evidence.

D.    *Conclusion*

It is ORDERED:

    (1) The ALJ's decision is AFFIRMED; and

    (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on June 13, 2022.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE